**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

THE ESTATE OF ROBERT LAWRENCE REYNOLDS,
Represented by his widow LINDA LEE COLLIER as
Personal Representative; and LINDA LEE COLLIER
in her individual capacity,

      Plaintiffs,

v.                                    No. 2:23-cv-0206 DLM/GJF

UNITED STATES GOVERNMENT,

      Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

In February 2020, Robert Lawrence Reynolds was admitted to the Veterans Affairs Medical Center (VAMC) in Albuquerque, New Mexico for treatment of an infection. During his hospitalization, he contracted COVID-19, and his condition deteriorated. On July 17, 2020, Reynolds passed away, in part due to complications from COVID-19. His widow, Linda Lee Collier, brings suit against the United States for medical negligence and loss of consortium. Collier has not retained an expert witness to testify about the alleged medical negligence. The United States moves for summary judgment and argues that without a medical expert, Collier's claims necessarily fail. For the reasons discussed below, the Court will grant summary judgment to the United States and dismiss the medical negligence and loss of consortium claims.

## I.    Legal Standards and Evidentiary Rulings

### A.    Summary Judgment Standard

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Halley v. Huckab*y, 902 F.3d 1136, 1143 (10th Cir. 2018), *cert.*

*denied*, 139 S. Ct. 1347 (2019) (citing *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018)). "A fact is 'material' if it could influence the determination of the suit." *Ortega v. Edgman*, No. 1:21-cv-0728 RB/JHR, 2023 WL 3122460, at *5 (D.N.M. Apr. 27, 2023) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute over a material fact is 'genuine' if a reasonable trier of fact could return a verdict for either party." *Id*. (citing *Anderson*, 477 U.S. at 248). "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Tanner v. San Juan Cnty. Sheriff's Off.*, 864 F. Supp. 2d 1090, 1106 (D.N.M. 2012)). "Once the movant meets this burden, [R]ule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial." *Id*. (quoting *Tanner*, 864 F. Supp. 2d at 1106). "A party cannot 'avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.'" *Id*. (quoting *Tanner*, 864 F. Supp. 2d at 1107). "Instead, the non-moving party must come forward with 'sufficient evidence on which the factfinder could reasonably find' in their favor." *Id*. (quoting *Tanner*, 864 F. Supp. 2d at 1107). "Evidence that is 'merely colorable,'" *id.* (quoting *Anderson*, 477 U.S. at 249), "or consists only of '[u]nsubstantiated allegations[,]'" *id.* (quoting *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018)), is insufficient.

### B.   Relevant Local Rules

Local Rule 56 requires the party moving for summary judgment to "set out a concise statement of all of the material facts as to which the movant contends no genuine issue exists." D.N.M. LR-Civ. 56(b). The movant must number the facts "and must refer with particularity to those portions of the record upon which the movant relies." *Id.* The non-moving party must also provide "a concise statement of the material facts . . . as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to

those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed." *Id.* "**All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.**" *Id.* (emphasis added).

The United States submits a statement of material facts. (*See* Doc. 95 at 3–4.) Collier, whose entire response is comprised of only five numbered paragraphs, makes no attempt to address or dispute the United States' factual assertions. (*See* Doc. 102.) Moreover, Collier offers only a single factual assertion but fails to support it with citations to the record. (*See id.* ¶ 4.) Consequently, she fails to meet summary judgment standards. Because Collier neither specifically controverts the United States' facts nor provides properly supported factual assertions in response, the Court deems the United States' facts undisputed.

## II.    Factual and Procedural Background

On February 27, 2020, Reynolds was admitted to the Albuquerque Veterans Affairs Medical Center (VAMC) due to an infection in his lower extremity/foot. (*See* Doc. 95-1 at 3–4.) Reynolds had a number of pre-existing health issues, including high blood pressure, congestive heart failure, Parkinson's disease, rapid weight loss, and emotional issues. (*See* Doc. 95-3 at 6–7.)

Reynolds was hospitalized during the COVID-19 pandemic. In the months preceding Reynolds's death, the State of New Mexico declared a public health emergency and "entered a series of [public health orders]" imposing restrictions on New Mexicans.[1] *See, e.g.*, *ETP Rio Rancho Park, LLC v. Grisham*, 564 F. Supp. 3d 1023, 1032–33 (D.N.M. 2021) (citing Updated: Governor, Department of Health announce first positive COVID-19 cases in New Mexico, Press

---

[1] As noted in *ETP Rio Rancho Park, LLC*, the Court takes judicial notice of the Governor's press release and the State's public health orders to provide context to the period of time at issue in this lawsuit. *See* 564 F. Supp. 3d at 1032–33 & nn. 1–3. "District courts may take judicial notice of 'a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* at 1033 n.3 (quoting Fed. R. Evid. 201(b)).

Releases, Office of the Governor, https://www.governor.state.nm.us/2020/03/11/updated-governor-department-of-health-announce-first-positive-covid-19-cases-in-new-mexico/ (Mar. 11, 2020); Kathyleen M. Kunkel, Public Health Emergency Order Limiting Mass Gatherings and Implementing Other Restrictions Due to COVID-19, New Mexico Department of Health (Mar. 16, 2020), available at https://cv.nmhealth.org/archives/public-health-orders-and-executive-orders/) (additional citations omitted). The COVID-19 virus was "extraordinarily serious and deadly . . . ."[2] *Id.* (quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 30 (2020) (Kavanaugh, J., concurring)) (subsequent citations omitted).

Reynolds contracted COVID-19 during his hospitalization. (*See* Doc. 95-1 at 4.) On June 25, 2020, Reynolds was admitted to the Medical Intensive Care Unit. (*See id.*) He developed Acute Respiratory Distress Syndrome (ARDS),[3] and "his condition declined further." (*See id.*) At some point, Reynolds "developed altered mental status[,] and a CT" revealed that he had suffered "a large, hemispheric stroke . . . ." (*See id.*) Reynolds passed away on July 17, 2020, as a result of the stroke and complications from COVID-19. (*See id.*; *see also* Doc. 31 ¶ 9.)

Collier, proceeding pro se, filed her original complaint on March 10, 2023. (Doc. 1.) Attorney William Stripp entered his appearance on Collier's behalf on May 26, 2023. (Doc. 16.) The United States filed two motions to dismiss. (Docs. 20–21.) In the first, the United States asked the Court to dismiss previously-named defendants—the Department of Veterans Affairs and Unknown Persons 1–100—as improper parties. (*See* Doc. 20.) Collier did not respond to the motion, and the Court granted it. (*See* Doc. 24 at 1.) In the second, the United States moved to

---

[2] "The Court may also take judicial notice . . . that [COVID-19] is highly contagious and potentially fatal, because this information is generally known within the District of New Mexico and can be 'accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)).

[3] *See* ARDS, https://www.mayoclinic.org/diseases-conditions/ards/symptoms-causes/syc-20355576 (last visited Mar. 4, 2026).

dismiss: (1) the wrongful death claim based on failure to exhaust her administrative remedies; (2) the personal injury claim because, under New Mexico law, the right to bring an action for personal injuries is extinguished on the individual's death; and (3) the claim for prejudgment interest on the basis that it is not allowed under the Federal Tort Claims Act (FTCA). (*See* Doc. 21.) Collier responded only to the first argument and submitted proof that she properly exhausted her administrative remedies. (*See* Doc. 22.) The United States withdrew its argument regarding exhaustion. (*See* Doc. 24 at 2 n.1 (citing Doc. 23 at 1).) Collier did not respond to the United States' second and third arguments regarding her claims for personal injuries to Reynolds or for prejudgment interest, and the Court granted the motion to dismiss as to these claims. (*See* Doc. 22; *see also* Doc. 24 at 7–11.) The Court allowed Collier to file an amended complaint. (*See* Doc. 24 at 12.)

Collier filed her Amended Complaint on January 7, 2024. (Doc. 31.) The Amended Complaint delineates two counts: Count 1 brought under the FTCA for medical negligence/wrongful death; and Count 2 for loss of consortium.[4] (*Id.* at 4, 6.)

Following the filing of the Amended Complaint, the Court entered orders setting discovery deadlines and a bench trial. (Docs. 42; 45.) Collier has received extensions of the deadlines at least twice due to medical and/or financial issues. (*See, e.g.*, Docs. 53 (Collier's motion to reset deadlines due to Collier's and her attorney's medical issues); 77 (Collier's motion to extend the expert report deadline due to limited financial resources).) The Court has also extended deadlines sua sponte at least twice. (*See* Docs. 80; 89.) Most recently, the Court extended the discovery

---

[4] In paragraph 36 of the Amended Complaint, Collier alleges that Reynolds "stated his wish not to be cremated but to have his remains prepared in a traditional way by a mortuary." (*See id.* ¶ 31.) Despite his wish, Collier alleges, the VA's months-long delay in releasing his remains resulted in cremation. (*See id.*) The parties discussed this allegation at an August 25, 2025 status conference, and counsel for the United States "conceded that [Collier] raised [this] issue . . . at the administrative level such that she may have preserved that claim." (*See* Doc. 79 at 2.)

deadline to March 30, 2026, for the limited purpose of taking Collier's deposition, and extended the pretrial motion deadline to May 14, 2026. (*See* Doc. 108 at 7.) This order was necessitated due to Collier's failure to appear for a scheduled deposition after the United States made numerous attempts to schedule one. (*See id.* at 1–2.)

On January 13, 2026, the United States moved for summary judgment on Counts 1 and 2.[5] (*See* Doc. 95.) It argues that despite numerous extensions of the discovery deadlines, Collier has not retained a medical expert, and without one, her claims fail. (*See id.* at 2–3, 7.)

### III.    Collier's wrongful death claim fails without a medical expert.

Collier brings a claim against the United States for medical negligence resulting in Reynolds's wrongful death. (*See* Doc. 31 ¶¶ 24–37.) She contends that the VAMC medical providers "owed [Reynolds] a duty of ordinary and reasonable care," and they "breached that duty" by failing to "exercise ordinary and reasonable care[] consistent with standards of medical care in the community . . . ." (*Id.* ¶¶ 28–29.)

> In order to prove medical negligence under New Mexico law, a plaintiff must show: "(1) the defendant owed the plaintiff a duty recognized by law; (2) the defendant breached the duty by departing from the proper standard of medical practice recognized in the community; and (3) the acts or omissions complained of proximately caused the plaintiff's injuries."

*Hunt v. United States*, No. 1:18-cv-1006 SWS/MLC, 2020 WL 4597282, at *3 (D.N.M. May 8, 2020) (quoting *Blauwkamp v. Univ. of N.M. Hosp.*, 836 P.2d 1249, 1252 (N.M. 1992)) (citing *Provencio v. Wenrich*, 261 P.3d 1089, 1093 (N.M. 2011)). "Under well-established New Mexico law, the testimony of a medical expert is required 'in most medical malpractice suits' to establish" each of the three elements of a medical malpractice claim. *Montano v. Centurion Corr. Healthcare of N.M., LLC*, No. 1:15-cv-0415 KG/LF, 2019 WL 3539845, at *2 (D.N.M. Aug. 2, 2019) (quoting

---

[5] The United States' motion does not deal with the claim related to the alleged failure to timely release Reynolds's body. (*See* Doc. 95 at 2 & n. 1.)

*Holley v. Evangelical Lutheran Good Samaritan Soc.*, 588 F. App'x 792, 795 (10th Cir. 2014)); *see also Siebert v. Okun*, 485 P.3d 1265, 1271 (N.M. 2021) (noting that the substantive elements of medical malpractice and medical negligence are the same). Expert testimony is normally required because "'technical and specialized subject matter' . . . is not within the 'common knowledge ordinary possessed by an average person . . . .'" *Montano*, 2019 WL 3539845, at *2 (quoting *Holley*, 588 F. App'x at 795). As a result, "unless the subject matter of the medical malpractice action falls within 'common knowledge ordinarily possessed by an average person,' the plaintiff must obtain a medical expert to establish a medical negligence claim." *Id.* (quoting *Gerety v. Demers*, 589 P.2d 180, 195 (N.M. 1978)). On a motion for summary judgment, the movant "'need only point out the lack of an expert witness' to prevail" on a medical negligence claim. *Id.* (quoting *Hilley v. Cadigan*, No. A-1-CA-36168, 2018 WL 2213697, at *1, ¶ 3 (N.M. Ct. App. Apr. 4, 2018)).

Here, it is undisputed that Collier has not secured a medical expert due to her financial situation. (*See* Doc. 102 ¶ 2.) The United States argues that "[m]edical experience and education are required to determine the diagnosis, treatment, and prognosis for care of an individual suffering from so many disease processes, in addition to the Covid 19 virus." (Doc. 95 at 6.) Collier summarily responds that "when a patient enters a hospital without having a condition such as Covid, and then acquires Covid which ultimately at least partially causes the patient's death," common sense dictates that "the treating facility should be held at least partially responsible." (Doc. 102 ¶ 5.) Collier's unsupported argument fails to move the needle.

The Court finds guidance in *Montano,* where the "[p]laintiff suffered from a myriad of ailments" following gall bladder removal surgery. 2019 WL 3539845, at *1. "Various medical specialists treated [him,]" and he alleged that certain medical providers failed to provide adequate

7

medical care. *See id.* The court opined that the "[p]laintiff's complex medical history and multiple ailments do not come within an average layperson's common knowledge." *See id.* at *2. Consequently, the plaintiff could "not establish the elements of a medical negligence claim without a medical expert." *Id.* Because he had not produced a medical expert, the court granted the defendant's motion for summary judgment on the medical negligence claim. *See id.* at *3.

Similarly, here, Reynolds entered the hospital with multiple serious health conditions. He contracted COVID-19 while hospitalized during a pandemic, and he died as a result of a stroke and complications from COVID-19. This is simply not a case where the average factfinder can reasonably figure out, "based on common experience or knowledge[,]" whether Reynolds's providers were negligent and whether that negligence proximately caused his death. *See Shivner v. CorrValues, LLC*, No. 2:20-cv-0497 RB/CG, 2022 WL 1014978, at *12 (D.N.M. Apr. 5, 2022) (citation omitted). Rather, determining whether the VAMC providers breached a standard of care and proximately caused Reynolds's death are "issues [that] involve a complex professional assessment" that "is not within the 'common knowledge ordinarily possessed by an average person.'" *See Holley*, 588 F. App'x at 796 (quoting *Pharmaseal Lab'ys, Inc. v. Goffe*, 568 P.2d 589, 594 (N.M. 1977)) (citing *Gonzales v. Carlos Cadena, D.P.M., P.C.*, No. 30,015, 2010 WL 3997235, at *2 (N.M. Ct. App. Feb. 19, 2010) (finding that expert testimony was required because "the average jury would know little to nothing about any risks inherent in performing an ingrown toe nail extraction on someone with diabetes or the standard of care for a podiatrist performing such an extraction")); *see also St. John v. Wilcox*, No. 1:08-cv-0229 JCH/KBM, 2009 WL 10666072, at *1–2 (D.N.M. Nov. 17, 2009) (finding expert testimony necessary to establish standard of care and causation in a case where, despite the fact that decedent was unresponsive when he arrived at the hospital and became aggressive and disoriented when he awoke, physician

ordered his release over the objections of his family).

In sum, without a medical expert, Collier cannot establish any of the three elements of her medical negligence claim. The Court will, therefore, grant the motion and dismiss this claim.

**IV.     Collier's loss of consortium claim is derivative of the medical negligence claim.**

A claim for "[l]oss of consortium derives from the underlying cause of action in the physically-injured spouse." *Archer v. Roadrunner Trucking Inc.*, 930 P.2d 1155, 1160 (N.M. 1997). "Loss-of-consortium damages are contingent upon the injured person's entitlement to general damages." *See id.* (citations omitted). The United States argues that if Collier's medical negligence claim fails, "her loss of consortium claim must also fail." (*See* Doc. 95 at 6–7 (discussing *Archer*, 930 P.2d at 1160).) Collier does not respond on this point and, therefore, concedes the issue.

Nevertheless, the Court agrees with the Government. "New Mexico law . . . requires the physically injured person to at least have a viable cause of action for general damages before a family member may recover for loss of consortium." *See Weaver v. Safeco Ins. Co. of Am.*, No. 1:24-cv-1225 SMD/JHR, 2025 WL 2987618, at *6 (D.N.M. Oct. 23, 2025) (citing *Archer*, 930 P.2d at 1161; *Turpie v. Sw. Cardiology Assocs., P.A.*, 955 P.2d 716, 718 (N.M. Ct. App. 1998) ("[T]he defendant must be at least potentially liable to the injured [person] before it can be liable to the [claimant] seeking loss of consortium damages.")). Because the Court is dismissing Collier's medical negligence claim and she brings no other claims based on personal injuries to her spouse, her loss of consortium claim must also be dismissed.

**THEREFORE,**

**IT IS ORDERED** that the United States' Motion for Partial Summary Judgment on Count 1 for medical negligence/wrongful death and Count 2 for loss of consortium (Doc. 95) is **GRANTED**.

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*